CYNTHIA H. COFFMAN
Attorney General of Colorado
LISA A. REYNOLDS*
Colo. Bar #35827
Assistant Attorney General
Lisa.Reynolds@state.co.us
Natural Resources and Environment Section
1300 Broadway, 7th Floor
Denver, CO 80203
Telephone: (720) 508-6252
* Counsel of Record for the State of Colorado

UNITED STATES DISTRICT COURT

DISTRICT OF ARIZONA

*******

| | |
|---|---|
| State of Arizona,<br><br>　　　　　　　　Plaintiff,<br><br>v.<br><br>Sally Jewell, Secretary of the Interior; United States Fish and Wildlife Service,<br><br>　　　　　　　　Defendants. | CASE NO. 4:15-CV-00245-JGZ<br><br>**COMPLAINT IN INTERVENTION** |

INTRODUCTION

1.    Intervenor-plaintiff the State of Colorado ("Colorado"), by and through

its Department of Natural Resources (DNR) and Division of Parks and

Wildlife (CPW), brings this action against Sally Jewell in her official capacity

1

as Secretary of the United States Department of the Interior and the United States Fish and Wildlife Service (collectively, "Defendants" or "FWS").

2.     Pursuant to provisions in the federal Administrative Procedure Act ("APA") regarding unreasonable delay, 5 U.S.C. §§ 555(b), 706(1), Colorado seeks declaratory and injunctive relief ordering Defendants to perform their mandatory statutory duty under Section 4(f) of the Endangered Species Act (ESA), 16 U.S.C. § 1533(f), to develop a recovery plan for the Mexican wolf (*Canis lupus baileyi*) within a reasonable date certain.

3.     On July 8, 2015 the State of Arizona filed its Complaint in this matter similarly challenging the failure of Sally Jewell, in her capacity as Secretary of the United States Department of the Interior, and the U.S. Fish and Wildlife Service, to perform a mandatory statutory duty to develop a recovery plan for the Mexican wolf under Section 4(f) of the Endangered Species Act ("ESA"), 16 U.S.C. § 1533(f)

4.     The Secretary has a mandatory duty to develop and implement "recovery plans for the conservation and survival of endangered species and threatened species …, unless [she] finds that such a plan will not promote the conservation of the species." 16 U.S.C. § 1533(f)(1).

5.     The Secretary has not determined a recovery plan for the Mexican wolf would not promote the conservation of the species.

6.     FWS has stated a new recovery plan will promote the conservation of the Mexican wolf.

7.     The Secretary has failed to develop a recovery plan for the Mexican wolf that meets the legal requirements for a recovery plan.

8.     The Secretary has failed to develop a recovery plan for the Mexican wolf that will lead to recovery and delisting of the Mexican wolf.

9.     The Secretary's conduct in failing to develop a recovery plan for the Mexican wolf that complies with the ESA is a violation of a non-discretionary duty under the ESA within the meaning of the Administrative Procedures Act (APA), 5 U.S.C. § 706.

10.    Colorado challenges the Secretary's failure to develop a recovery plan for the Mexican wolf that meets the legal requirements of ESA.

11.    The Secretary's conduct constitutes action unreasonably delayed or unlawfully withheld within the meaning of the APA.

## I.     JURISDICTION AND VENUE

12.    The Court has jurisdiction over this action pursuant to 5 U.S.C. §§ 701-706 and 28 U.S.C. § 1331.

13.    The Court may grant the relief requested under 28 U.S.C. §§ 2201-2202 and 5 U.S.C. §§ 701-706.

14. This Complaint does not allege a violation of the ESA and therefore is not subject to the 60-day notice requirement of 16 U.S.C. § 1540(g).

15. Venue is proper in this district pursuant to 28 U.S.C. § 1391(e) as the historical range for the Mexican wolf includes Arizona and New Mexico and the current wild population includes only Arizona and New Mexico.

## II.     PARTIES

16. Colorado's Division of Parks and Wildlife (CPW) and Colorado's Parks and Wildlife Commission exercise broad, federally recognized jurisdiction over wildlife within the state's borders. See *Kleppe v. New Mexico*, 426 U.S. 529, 545 (1976).

17. Under a broad statutory scheme, CPW and Colorado's Parks and Wildlife Commission are responsible for protecting, preserving, enhancing, and managing wildlife and wildlife habitats within the state.  Colo. Rev. Stat. §§ 33-1-101, 33-1-104(1).  Wildlife within the State of Colorado is the property of the state.  *Id*. at § 33-101-1(2).

18. The listing of the Mexican wolf as endangered compromises CPW's ability to manage wildlife and its habitat, should wolves be permitted to disperse north into Colorado.  The presence of endangered Mexican wolves in the state would also impose significant costs on CPW and other state agencies.

19. Secretary Jewell is the federal official responsible for developing and implementing recovery plans for species listed under the ESA. The Secretary is sued in her official capacity.

20. The Secretary has delegated the responsibility to develop and implement recovery plans to FWS, an agency within the U.S. Department of Interior. FWS is responsible for administering the ESA with respect to the Mexican wolf.

## IV. LEGAL BACKGROUND

21. Congress passed the ESA in 1973 for the express purpose of conserving threatened and endangered species and the ecosystems they depend upon. 16 U.S.C. § 1531(b).

22. Congress defined "conservation" to mean the use of all methods and procedures which are necessary to bring any endangered or threatened species to the point at which the measures provided pursuant the Act are no longer necessary. 16 U.S.C. § 1532(3).

23. To achieve this purpose, the ESA requires the Secretary to "list" species of plants and animals facing extinction as either "threatened" or "endangered." 16 U.S.C. § 1533(a)(3)(A)(i).

24. The primary goal of the ESA is to recover species so the protections of the Act are no longer needed. 16 U.S.C. §§ 1531(c)(1) and 1532(3).

25. To accomplish the mandate to conserve and recover species, the ESA requires FWS to develop and implement "recovery plans" for the conservation and survival of listed species, unless it finds a recovery plan would not benefit the species. 16 U.S.C. § 1533(f).

26. A "recovery plan" under the ESA must include, to the maximum extent practicable: (i) a description of such site specific management actions as may be necessary to achieve the plan's goal for the conservation and survival of the species; (ii) objective, measurable criteria which, when met, would result in a determination that the species should be de-listed; and (iii) estimates of the time required and the cost to carry out those measures needed to achieve the plan's goal and to achieve intermediate steps toward the goal. *Id*.

27. The 1982 Mexican wolf document fails to meet the required elements of a recovery plan under ESA as it fails to include objective, measurable criteria which, when met, would result in a determination that the species should be removed from the list.

28. FWS's duty to prepare a recovery plan is non-discretionary, but the ESA does not specify a date-certain deadline by which a recovery plan must be completed.

29. When a statute grants some degree of discretion to an agency as to the timing of a mandatory action, thereby imposing only a general duty of

timeliness, a suit seeking to compel the agency to act is properly brought under the APA.

30. The APA provides parties with a cause of action when agency action has been unreasonably delayed.

31. The APA requires administrative agencies to conclude matters presented to them "within a reasonable time" and empowers reviewing courts to "compel agency action unlawfully withheld or unreasonably delayed." 5 U.S.C. §§ 555(b), 706(1).

32. FWS's failure to develop a recovery plan for the Mexican wolf that complies with the requirements of the ESA is an agency action required by law that is unlawfully withheld and unreasonably delayed.

### III.   FACTUAL ALLEGATIONS

33. The Mexican wolf is listed as an endangered subspecies of the gray wolf.

34. In 1976, FWS initially listed the Mexican wolf as endangered when it listed the North American population of gray wolf.

35. In January 2015, the Service modified the status of the Mexican wolf by designating the Mexican wolf as a subspecies and listing the population as endangered. *See Endangered and Threatened Wildlife and Plants; Endangered Status for the Mexican Wolf* (Final Rule), 80 Fed. Reg. 2488 (Jan. 16, 2015)

36.     In 1982, FWS published a document styled a "recovery plan" for the Mexican wolf.  U.S. Fish and Wildlife Service, *Mexican Wolf Recovery Plan* (1982). At the time FWS developed this document, only a captive population of Mexican wolves existed. *Id*. at 3.  The objective of the 1982 recovery document was to maintain a captive breeding program and to reintroduce the Mexican wolf to establish a viable, self-sustaining population of at least 100 wolves in the wild. *Id*. at 23.

37.     The 1982 recovery document only provided for protection of the captive wolf population and a wild population of at least 100 wolves. It did not provide for recovery of the Mexican wolf.

38.     FWS has stated the objective for the 1982 recovery document was not to achieve Mexican wolf recovery, and the 1982 recovery document stated there was no possibility for complete delisting of the Mexican wolf.  *Id*.

39.     In 1998, the Service reintroduced the Mexican wolf into the Blue Range Wolf Recovery Area as an experimental nonessential population under Section 10(j) of ESA.  *See Establishment of a Nonessential Experimental Population of the Mexican Wolf* (Final Rule), 63 Fed. Reg. 1752 (Jan. 12, 1998).

40.     By 2013, FWS estimated the Mexican wolf population in the wild to be 83 individuals.

41.     Under the current regulations governing the nonessential experimental population of Mexican wolves, the Mexican Wolf Recovery Area is restricted to parts of Arizona and New Mexico. Wolves dispersing north of Interstate 40 are to be captured and returned to the Recovery Area. *Revision to the Regulations for the Nonessential Experimental Population of the Mexican Wolf* (Final Rule), 80 Fed. Reg. 2512 (Jan. 16, 2015) at 2533.

42.     The best available science suggests the historic range of the Mexican wolf did not include Colorado, except for occasional dispersal of individuals.

43.     No Mexican wolves currently reside in Colorado.

44.     The 1982 recovery document does not qualify as a recovery plan for the Mexican wolf under the terms of § 1533(f) of the ESA.

45.     FWS has admitted the 1982 recovery document does not contain the objective, measurable criteria for delisting as required by 16 U.S.C. § 1533(f). *Revision to the Regulations for the Nonessential Experimental Population of the Mexican Wolf*, 80 Fed Reg. at 2514.

46.     FWS has provided no determination that Mexican wolf recovery cannot be achieved through a new recovery plan meeting the legal requirements of the ESA, and FWS has made no determination that objective, measurable criteria for recovery are impracticable.

47.     FWS has admitted the 1982 recovery document is insufficient because it "operates without any guidance in terms of the number and distribution of

wolves considered adequate for recovery and delisting." U.S. Fish and Wildlife Service, *Mexican Wolf Conservation Assessment* 7 (2010).

48.     Since 1982, FWS has convened three recovery teams to develop a recovery plan for the Mexican wolf. Despite this effort, FWS has not completed a new recovery plan meeting the legal requirements of the ESA.

49.     Some members of the most recent of these recovery teams, convened in 2010, opined that establishment of subpopulations of Mexican wolves in southern Colorado and southern Utah would be required to achieve recovery.

50.     FWS has taken the position that "the recovery and long-term conservation of the Mexican wolf is likely to depend on establishment of a metapopulation or several semi-disjunct populations spanning a significant portion of its historic range in the region." *Revision to the Regulations for the Nonessential Experimental Population of the Mexican Wolf*, 80 Fed. Reg. at 2551.

51.     FWS has stated "a future revised recovery plan" will consider the importance of northern New Mexico and southern Colorado (areas north of Interstate 40) for conservation and recovery of the Mexican wolf. *Id.* at 2540.

52.     FWS has acknowledged that a sound, peer-reviewed, scientific basis has not been developed which could guide recovery planning on where Mexican wolves are needed to achieve full recovery and delisting. U.S. Fish & Wildlife Service, *Environmental Impact Statement for the Proposed*

*Revision to the Regulations for the Nonessential Experimental Population of the Mexican Wolf* (November 2014) at Chp.2 p. 6.

53. According to FWS, the need to use areas north of Interstate 40 for recovery has not been established. *Id.* at 7.

54. A scientifically-based, peer-reviewed recovery plan must be developed to establish whether areas in Colorado are necessary and appropriate for Mexican wolf recovery and de-listing.

55. A scientifically-based population goal and other objective, measurable recovery criteria are needed to establish the necessary parameters to allow for de-listing of the Mexican wolf.

56. Although FWS's failure to develop a sufficient recovery plan constitutes unreasonable delay, once the planning process commences, adequate time is required in order for FWS to coordinate with the affected states, conduct the necessary scientific analysis, seek peer reviews, seek public comment, and finalize a recovery plan.

## V.   FIRST CLAIM FOR RELIEF
**(Violation of the Administrative Procedures Act)**

57. All preceding paragraphs are incorporated herein.

58. The Mexican wolf has been listed as endangered since 1976.

59. The 1982 Mexican wolf recovery document is not a recovery plan as described in ESA because it does not include objective, measurable criteria

which, when met, would result in a determination in accordance with Section 4(f) of ESA that the species be removed from the list.

60. FWS itself has acknowledged the 1982 plan does not provide any objective measures for recovery of the Mexican wolf that could lead to de-listing of the species.

61. Once an agency's duty to undertake an action arises, the APA requires the agency act with reasonable timeliness.

62. FWS's failure to develop a legally compliant recovery plan for the Mexican wolf constitutes unreasonable delay and non-discretionary action unlawfully withheld.

## REQUEST FOR RELIEF

WHEREFORE, Plaintiff-Intervenor respectfully requests that this Court enter a judgment in favor of Plaintiffs and against Defendants as follows:

1. Declare FWS's failure to develop a legally sufficient recovery plan for the Mexican wolf under 16 U.S.C. § 1533(f) is agency action unlawfully withheld and unreasonably delayed under 5 U.S.C. § 706(1);

2. Order FWS to develop a legally sufficient recovery plan under 16 U.S.C. § 1533(f) within an appropriate time frame;

3. Award Colorado its reasonable fees, costs, and expenses, including attorney's fees, associated with this matter, under 28 U.S.C. § 2412(d); and

4. Grant Colorado such additional relief as the Court may deem just and proper.

Respectfully submitted this 16th day of September, 2015.

        CYNTHIA H. COFFMAN
        Colorado Attorney General

        /s/  Lisa A. Reynolds
        LISA A. REYNOLDS

        Assistant Attorney General
        Attorneys for State of Colorado

## CERTIFICATE OF SERVICE

    I hereby certify that on September 16, 2015, I electronically filed the foregoing with the Clerk of the District Court for the District of Arizona using the CM/ECF system, which will send a Notice of Electronic Filing to the attorneys of record.

                                      s/ *Lisa A. Reynolds*
                                      LISA A. REYNOLDS
                                      State of Colorado