Matthias L. Sayer
General Counsel
New Mexico Department of Game and Fish
One Wildlife Way
Santa Fe, NM 87507
Telephone: (505) 476-8026
Facsimile: (505) 476-8123
matthiasl.sayer@state.nm.us

*Attorney for Proposed Plaintiff-Intervenor*
*New Mexico Department of Game and Fish*



## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| State of Arizona, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | No. 4:15-cv-245-JGZ |
| ) | |
| Sally Jewell, Secretary ) | |
| United States Department of the Interior; ) | |
| United States Fish and Wildlife Service, ) | COMPLAINT IN |
| ) | INTERVENTION |
| Defendant. ) | |

## NEW MEXICO DEPARTMENT OF GAME AND FISH
## COMPLAINT IN INTERVENTION

1. On July 8, 2015 the State of Arizona filed its Complaint in this matter challenging the failure of Sally Jewell in her capacity as Secretary of the United States Department of the Interior (Secretary) and the United States Fish and Wildlife Service (Service) (collectively, "Defendants") to perform a mandatory statutory duty to develop a

recovery plan for the Mexican wolf under Section 4(f) of the Endangered Species Act (ESA), 16 U.S.C. § 1533(f).

2. The Secretary has a mandatory duty to develop and implement "recovery plans for the conservation and survival of endangered species and threatened species listed pursuant to the [ESA], unless [she] finds that such a plan will not promote the conservation of the species." 16 U.S.C. § 1533(f)(1).

3. The Service changed the taxonomic status of the Mexican wolf by removing the Mexican wolf's status as a full species and designating the Mexican wolf as a subspecies of the grey wolf. *See Endangered and Threatened Wildlife and Plants; Endangered Status for the Mexican Wolf* (Final Rule), 80 Fed. Reg. 2488 (Jan. 16, 2015). There is no recovery plan for this recently reclassified subspecies of the gray wolf.

4. Even if the Service's 1982 Mexican wolf recovery document could be deemed a recovery plan for the new subspecies of grey wolf, it is legally insufficient because it does not identify measures to conserve the species, does not contain criteria under which the species can be delisted, and does not provide time and cost estimates for the measures believed necessary for recovery. The Service acknowledged all of these facts. *See* 80 Fed Reg. at 2514; *See also* U.S. Fish and Wildlife Serv., *Mexican Wolf Conservation Assessment* 7 (2010).

5. Defendants never determined that a recovery plan for the Mexican wolf would fail to promote the conservation of the species.

6. To the contrary, Defendants acknowledge that a new recovery plan will promote the conservation of the Mexican wolf.

2

7.  In consideration of these facts, the Department repeatedly petitioned Defendants to develop a new, legally sufficient recovery plan.

8.  Defendants effectively ignored the Department's pleas for a new recovery plan, and for 32 consecutive years, failed to develop a recovery plan for the Mexican wolf that meets the legal requirements that the plan lead to recovery and delisting of the Mexican wolf.

9.  Defendants' failure to develop a recovery plan that complies with the ESA is arbitrary and capricious under the Administrative Procedure Act (APA), 5 U.S.C. § 706.

10. Defendants' failure to develop a recovery plan that complies with the ESA or to meaningfully respond to the Department's repeated petitions to develop a new recovery plan represents agency action unlawfully withheld under 5 U.S.C. § 706 and 5 U.S.C. § 553(e).

11. The Department alleges the following, based on information and belief:

### I.   JURISDICTION AND VENUE

12. The Court has jurisdiction over this action pursuant to 5 U.S.C. §§ 701-706 and 28 U.S.C. § 1331.

13. The Court may grant the relief requested under 28 U.S.C. §§ 2201-2202 and 5 U.S.C. §§ 701-706.

14. Venue is proper in this district pursuant to 28 U.S.C. § 1391(e) as the historical range for the Mexican wolf includes Arizona and New Mexico and some of the

harm is occurring within this district. Venue is also proper because Plaintiff's action is currently pending in this Court.

## II.   PARTIES

15. The State of New Mexico, through the New Mexico State Game Commission (Commission) and Department, exercises federally recognized broad trustee and police powers over wild animals. *See Kleppe v. New Mexico*, 426 U.S. 529, 545 (1976). All wildlife within the borders of New Mexico is "owned by the State in its sovereign capacity for the common benefit of all its people." *Lacoste v. Department of Conservation*, 263 U.S. 545 (1924). Included within this broad stewardship and power is "the duty of safeguarding this property in the interest of the public." *State ex rel. Sofeico v. Heffernan*, 41 N.M. 219, 227 (1936); N.M. Stat. Ann. §§ 17-1-1 and 17-1-14. The New Mexico legislature has enacted a comprehensive statutory scheme to conserve, manage, and protect State wildlife. *See* N.M. Stat. Ann. §§ 17-1-1 through 17-6-11.

16. The listing of the Mexican wolf as endangered and the Service's reintroduction project have imposed significant costs on the Department and have seriously complicated the Department's ability to manage and conserve New Mexico wildlife and habitat. These costs will continue until the Mexican wolf is recovered, the Service removes the species list of endangered species, and management is returned to the State.

17. Federal control of the Mexican wolf also interferes with the Department's sovereign authority to manage and conserve the Mexican wolf pursuant to New Mexico

law, and this will continue until the Mexican wolf is recovered and the Service delists the species.

18. The Department is suffering harm to its sovereign and proprietary interests resulting from the Service's failure to meet its duty to develop a recovery plan for the Mexican wolf that will lead to the recovery and delisting of the species and the return of management authority to the State.

19. Defendant SALLY JEWELL, United States Secretary of the Interior, is the highest ranking official within the U.S. Department of the Interior and, in that capacity, has ultimate responsibility for the administration and implementation of the ESA with regard to terrestrial endangered and threatened species, and for compliance with all other federal laws applicable to the Department of the Interior. She is sued in her official capacity. Secretary Jewell is the federal official responsible for developing and implementing recovery plans for species listed under the ESA. The Secretary is sued in her official capacity.

20. Defendant DEPARTMENT OF THE INTERIOR ("Interior") is the federal agency charged with administration of the ESA.

21. Defendant FISH & WILDLIFE SERVICE is a part of Interior that has been delegated the responsibility to implement much of the ESA.

### III. FACTUAL BACKGROUND

22. The Mexican wolf is listed as an endangered subspecies of the gray wolf. In 1976, the Service initially listed the Mexican wolf as endangered when it listed the North American population of gray wolf. In January 2015, the Service modified the status of the

5

Mexican wolf by designating the Mexican wolf as a subspecies and listing the population as endangered. *See Endangered and Threatened Wildlife and Plants; Endangered Status for the Mexican Wolf* (Final Rule), 80 Fed. Reg. 2488 (Jan. 16, 2015)

23. The Service published a document styled a "recovery plan" for the Mexican wolf in 1982. *See* U.S. Fish and Wildlife Serv., *Mexican Wolf Recovery Plan* (1982). While the 1982 plan's flaws are numerous, perhaps the most fundamental flaw is that the plan applies to a taxonomic species that is no longer recognized by Defendants. At the time the Service developed this document, only a captive population of Mexican wolves existed. *Id.* at 3. The 1982 recovery document had as its objective to maintain a captive breeding program and to reintroduce the Mexican wolf to establish a viable, self-sustaining population of at least 100 wolves in the wild. *Id.* at 23.

24. The 1982 recovery document only provided for protection of the captive wolf population and a wild population of at least 100 wolves. The 1982 document did not provide for recovery of the Mexican wolf. *Id.*

25. The Service has stated that the objective for the 1982 recovery document was not to achieve Mexican wolf recovery, and the 1982 recovery document stated that there was no possibility for complete delisting of the Mexican wolf. *Id.*

26. In 1998, the Service reintroduced the Mexican wolf into the Blue Range Wolf Recovery Area as an experimental nonessential population under Section 10(j) of ESA. *See Establishment of a Nonessential Experimental Population of the Mexican Wolf* (Final Rule), 63 Fed. Reg. 1752 (Jan. 12, 1998). By 2013, the Mexican wolf population in the wild was 83 individuals. *See Revision to the Regulations for the Nonessential*

*Experimental Population of the Mexican Wolf* (Final Rule), 80 Fed. Reg. 2512 (Jan 16, 2015).

27. The objective of the original recovery plan is inadequate because it applies to a species that is no longer recognized by Defendants and because it does not include provisions in the plan that the ESA requires to be incorporated into a recovery plan.

28. The ESA requires the Service to develop a recovery plan that incorporates "objective, measureable criteria which, when met, would result in a determination, in accordance with the provisions of [Section 4(f) of the ESA], that the species be removed from the list." 16 U.S.C. § 1533(f).

29. The Service has admitted that the 1982 recovery document does not contain the objective, measurable criteria for delisting as required by Section 4(f). 80 Fed Reg. at 2514.

30. The 1982 recovery document does not qualify as a recovery plan for the Mexican wolf under the terms of § 4(f) of the ESA.

31. The Service has provided no explanation that Mexican wolf recovery cannot be achieved through a new recovery plan that meets the legal requirements of the ESA, and the Service has made no determination that objective, measurable criteria for recovery are impracticable.

32. The Service has admitted that the 1982 recovery document is insufficient because it "operates without any guidance in terms of the number and distribution of wolves considered adequate for recovery and delisting." U.S. Fish and Wildlife Serv., *Mexican Wolf Conservation Assessment* 7 (2010).

7

33. Since 1982, the Service has convened three recovery teams to develop a recovery plan for the Mexican wolf. Despite this effort, the Service has not completed a new recovery plan that meets the legal requirements of the ESA.

## IV.   LEGAL BACKGROUND

34. The Endangered Species Act was passed by Congress in 1973 for the express purpose of conserving threatened and endangered species and the ecosystems they depend upon. 16 U.S.C. § 1531(b).

35. Congress defined "conservation" to mean the use of all methods and procedures which are necessary to bring any endangered or threatened species to the point at which the measures provided pursuant the Act are no longer necessary. 16 U.S.C. § 1532(3).

36. To achieve this purpose, the ESA requires the Secretary to "list" species of plants and animals that are facing extinction as either "threatened" or "endangered." 16 U.S.C. § 1533(a)(3)(A)(i).

37. Congress defined an "endangered species" to be "any species which is in danger of extinction throughout all or a significant portion of its range." 16 U.S.C. § 1532(6).

38. A species is "threatened" if it is "likely to become an endangered species within the foreseeable future throughout all or significant portion of its range." 16 U.S.C. § 1532(20).

39.     The primary goal of the ESA is to recover species so the protections of the Act are no longer needed. 16 U.S.C. §§ 15319(c)(1) and 1532(3). The Secretary is mandated under the Act to conserve species listed as threatened or endangered.

40.     To accomplish the mandate to conserve and recover species, the ESA requires the Service to develop and implement "recovery plans" for the conservation and survival of listed species, unless the Service finds that a recovery plan would not benefit the species. 16 U.S.C. § 1533(f).

41.     In developing a recovery plan, the FWS shall, to the maximum extent practicable, give priority to those threatened or endangered species, with regard to taxonomic classification, that are most likely to benefit from such plans, particularly those species that are, or may be, in conflict with construction or other development projects or other forms of economic activity. *Id.*

42.     A "recovery plan" under the ESA must include: (i) a description of such site specific management actions as may be necessary to achieve the plan's goal for the conservation and survival of the species; (ii) objective, measurable criteria which, when met, would result in determination in accordance with [ESA] that the species be removed from the list.; and (iii) estimates of the time required and the cost to carry out those measures needed to achieve the plan's goal and to achieve intermediate steps toward the goal. *Id.*

43.     The 1982 Mexican wolf recovery document misidentifies the species and fails to meet each of the required elements of a recovery plan under ESA as it fails to

9

include objective, measurable criteria which, when met, would result in a determination in accordance with [§ 4(f)] that the species be removed from the list. 16 U.S.C. § 1533(f).

44. The Administrative Procedures Act ("APA") was enacted by Congress with the intent of providing a process by which the federal courts may review agency actions. 5 U.S.C. §§ 701-706.

45. The APA also permits interested parties to petition agencies for the issuance, amendment, or repeal of a rule. 5 U.S.C. § 553(e).

46. Pursuant to the APA, the Court is to compel agency action unlawfully withheld or unreasonably delayed and set aside agency action, findings, and conclusions found to be arbitrary and capricious, an abuse of discretion, or otherwise not in accordance with the law. *Id.* § 706.

47. The Service's failure to develop a recovery plan for the Mexican wolf that complies with the requirements of the ESA is an agency action required by law that is unlawfully withheld and unreasonably delayed.

## V.   CLAIM FOR RELIEF
### (Violation of the Administrative Procedures Act)

48. All preceding paragraphs are incorporated herein

49. The Mexican wolf has been listed as endangered since 1976, but was taxonomically reclassified as a subspecies of grey wolf in 2015.

50. The 1982 Mexican wolf recovery document is not a recovery plan as described in ESA because it does not include objective, measurable criteria which, when

met, would result in a determination in accordance with Section 4(f) of ESA that the species be removed from the list.

51. The FWS acknowledged in the first instance that the 1982 recovery document was not a complete plan for Mexican wolf recovery and would require changes.

52. The FWS has not stated that a recovery plan that includes objective, measurable criteria that will lead to the delisting of the Mexican wolf would not promote the conservation of the Mexican wolf.

53. The Department petitioned Defendants to promulgate a new, legally sufficient recovery plan on numerous occasions.

54. The failure to develop a recovery plan that meets the legal requirements of the ESA is action unlawfully withheld or unreasonably delayed within the meaning of the APA.

55. The Court has the authority to compel agency action unlawfully withheld or unreasonably delayed." 5 U.S.C. § 706(1).

## VI.   PRAYER FOR RELIEF

1. Declare that the Service's failure to develop a legally sufficient recovery plan for the Mexican wolf under 16 U.S.C. § 1533(f) is agency action unlawfully withheld and unreasonably delayed under 5 U.S.C. § 706(1);

2. Order the Service to develop a legally sufficient recovery plan under 16 U.S.C. § 1533(f) by a reasonable date certain and in conformity with the Endangered and Threatened Species Recovery Planning Guidance (V 1.3);

11

3. Award the Department its reasonable fees, costs, and expenses, including attorney's fees, associated with this matter, under 28 U.S.C. § 2412(d); and

4. Grant the Department such additional relief as the Court may deem just and proper.

DATED this 2nd day of September, 2015.

For Proposed Plaintiff- Intervenor
New Mexico Department of Game and Fish

By: /s/ Matthias Sayer
Matthias L. Sayer, General Counsel
New Mexico Department of Game and Fish
One Wildlife Way
Santa Fe, NM 87507
Telephone: (505) 476-8026
Facsimile: (505) 476-8123
matthiasl.sayer@state.nm.us

## CERTIFICATE OF SERVICE

I certify that on September 2nd, 2015, I filed the foregoing, via U.S. mail, with the Clerk of the U.S. District Court of Arizona and with counsel in this matter at the below-listed addresses:

*Matthew Jargon*

*Attorney for Proposed Plaintiff- Intervenor*
*New Mexico Department of Game and Fish*

James Frederick Odenkirk
Office of the Attorney General
1275 W Washington
Phoenix, AZ 85007-2997
602-542-7787
Fax: 602-542-7798
Email: james.odenkirk@azag.gov

Nicole Marie Smith
U.S. Department of Justice
601 D. St. NW
Washington, DC 20004
202-305-0368
Fax: 202-305-0275
Email: Nicole.m.smith@usdoj.gov

Lisa Anne Reynolds
Colorado Attorney General's Office
1300 Broadway, 7th Fl.
Denver, CO 80203
720-508-6252
Fax: 720-508-6039
Email: lisa.reynolds@state.co.us

13